Good morning. May it please the Court. My name is Katerina Rost. I'm here to represent Mr. Rohit. I'd like to resume. Two minutes for rebuttal, please. I'm having a little trouble hearing you. I apologize. I'll speak up. There are several issues in these consolidated matters, the two most significant ones being the Petitioner's conviction for solicitation of prostitution, and the second one being solicitation, I apologize, attempts to dissuade a witness in violation of Section 136.1c.1. Additionally, there is also on review with this Court Petitioner's request for eligibility for asylum. We believe that both the Board's and the Judge's decisions should be reversed in this matter since neither conducted a proper and complete analysis of Petitioner's two convictions pursuant to the crime law interpreted precedent law established by the circuit. With regards to his conviction for solicitation of prostitution, the Board did not address that issue at all. Maybe we ought to talk about that. I looked at that and I said the Board did not comment on the crime of soliciting prostitution. Is that because you didn't raise it? No, we did raise it, Your Honor. Well, where? I read your briefs. You specifically suggest that the Board did not the dissuading or attempting to dissuade a witness constitute a crime of moral turpitude. But when you change to the conviction for the crime of soliciting prosecution, your argument is not that it isn't a crime of moral turpitude, but that you ought to have more time to direct a record. Well, Your Honor, that was part of the argument. That was an additional argument.  Where did you make that argument? I tried to find that. I mean, it was interesting to me that the Board did not comment about it, and yet it now becomes to me. And so I looked underneath to try to find out where you even raised it to the Board. You did raise that you ought to have a right to develop a record about that, but I didn't ever see where you challenged that it was a crime of moral turpitude. I'm sorry, Your Honor, and you're referring to the petition opening brief? I'm referring to your brief that you made in front of the Board and the transcript of what the Board did. Well, Your Honor, the judge never did conduct a proper analysis, and as such made sure. That's not the question. That's not the question. Whether you exhausted in the before the Board, on that question. Whether we exhausted it before the Board? Yes.  Yes. In the brief to the Board, Your Honor. Yes. I would be quite certain that we did. Well, Judge Smith is saying that what you did was say that you needed time to put on evidence. Presumably, if you needed time to put on evidence, it's because there wasn't a categorical answer to it. So that seems to amount to the same thing. But do you know what you said? Your Honor, I'm looking at the administrative record. Well, you can go on. I mean, I just wanted to make sure that that was properly in front of us, because when I read the Board's decision, it didn't talk about it. It does talk about matter of verbatim, so it adopts what the IJ did, and so, therefore, we can have it in front of us. But I was some concern that your argument, which was that you ought to have a right to develop a record on the issue of whether the penal code constitutes a removable defense, said, based on the situation in front of us, it probably was. But maybe if you had more record, you could change our mind or the BIA's mind. Yes. I see the same argument is made in the Board, in the brief to the Board, that the judge did not allow for development of the record. Thank you. I don't know whether that answers the question, but... Go ahead. Yes. With regards to the determination made by the judge with regards to the finding of the solicitation of prostitution, the judge did not analyze that conviction pursuant to well-established Ninth Circuit law. He only made a very conclusory statement that it is contrary to accepted morality of the society for an individual to solicit sexual contact in exchange for money. He did not determine whether it is vile, base, depraved, contrary. He only made the determination that it was contrary to moral values of society. And, again, he did not consider Ninth Circuit precedent decisions, which treat on some other subsections of California Penal Code Section 647. With respect to the conviction for dissuading or attempting to dissuade a witness from reporting a crime under California Penal Code Section 136.1c1, the Board did engage in analysis of that section in its April 607 decision and stated that those actions are vile, base, depraved, and contrary to duties owed to people and society. The Board basically upheld the judge's decision. And that offense as applied here, the felony version of it, involved threats of violence? Threat of violence or implied threat of violence to the person or property. Why isn't that tantamount to obstruction of justice? Pardon me? Why isn't that tantamount to obstruction of justice was what the I.J. said. Well, because it requires categorical analyses, Your Honor, which was never commented. I understand that. What I'm asking you is, my understanding is that obstruction of justice is a fairly classic crime of moral turpitude. But I believe that a closer consideration of the statute under 136.1c1 would show that there can be instances, would be reasonable to infer that there are instances when somebody is trying to report a false information on a crime or trying to threaten somebody with disclosing information if they do a particular act. That was a threat of violence, no? I thought the threat has to be a physical threat. Accompanying by force or an express or implied violence of force or violence. Against a person or their property. Right.  So it does not have to be a threat to somebody's welfare. But it has to be a threat of violence. So the example you just gave is not correct. It can't be a threat to report somebody. A threat of violence of reporting somebody, something that is not correct, Your Honor, something that is false. I'm not understanding what you're saying. The person might be, the person who is being threatened, the victim, the witness, might be attempting to create, to make a fraudulent. Maybe he is. But still you're dissuading somebody by threatening them with violence. But the mens rea, Your Honor, is not there. The mens rea is not to hurt somebody for the purpose of dissuading them from allowing the justice system to. I'm not understanding that. I mean, it isn't an obstruction of justice, for example, if you try to bribe a witness, even if the witness was going to lie. I don't think there is a substantive content to that. The question of whether the witness is lying or not lying is for the justice system. But the obstruction problem is getting in the way of the justice system deciding something. Yes, Your Honor. Yes, Your Honor, that is true. But I would still think that the board's reliance on very old cases and not considering Ninth Circuit law in their decision, in reaching their decision, was not appropriate. There is no mention of intent in their decision. The Attorney General's recent ruling. Isn't intent inherent in the dissuasion? Dissuasion is something that you intend. How could you dissuade somebody with a threat of violence and not intend to do it? Your Honor, I mean, it would just be qualitatively a different kind of intent if you were trying to, if you were threatening to destroy their property rather than hurting themselves personally, hurting that person personally. Anything else? With regards to the asylum claim, Your Honor, the petitioner and his entire family had suffered past persecution. They had met the, they had shown and submitted evidence that the family had suffered past persecution in Fiji. They had also submitted a lot of background evidence to show that there was well-founded fear of future persecution. They had met both the objective and subjective prongs for finding of asylum under Ninth Circuit law. Let me just suggest, what if I believed you, and I only found three particular situations for past persecution, but what if I believed you about that, that there was enough? My worry was, what's the idea that we have that the country in this particular situation did not, was not able to take care of it? I mean, in the first attack by native Fijians, it was never reported to the police. With the father, the police responded, took the report. He didn't know who had robbed him. And with the cousin, he dated the girlfriend. The police investigated and put the men in jail. It doesn't seem to me that your evidence on a substantial standard review meets the idea that the police were not, or that the government was not able to respond or did not do something to try to control the problem. Well, Your Honor, reports were taken, but I don't believe there was any further action in trying to... Well, but on the first, there was never even a report that was taken. The second, the people, the police responded, took the report, and he said, I don't even know who the men were that robbed me. And with the cousin, he'd been dating the girlfriend. The police investigated and put the men in jail. Well, Your Honor, it shows that the family had been singled out in one way, and the petitioner and his entire family were always sure that it was because of their background as Hindus in Fiji. When we're talking about past persecution or future persecution, isn't it interesting that when we're talking about substantial evidence that nobody even left Fiji for five years until after these acts occurred? They were... Doesn't that give substantial evidence to the IJ on an asylum if they don't even leave Fiji until five years after the acts occurred? Well, Your Honor, they were not able to leave Fiji, so if the record had been given proper weight, it would have allowed the conclusion that they were not in a position to leave. Well, again, we're talking about substantial evidence to support the IJ here. I'm not suggesting that you can't argue facts in your favor or whatever, but I'm trying to say if the old IJ down here trying to make these decisions about this and there are facts in the records that support his decision, then I can't overturn it, even if you have other facts that he didn't think were important. Your Honor, because it's a more... Under the substantial evidence standard, you have to consider more than just the past persecution. You also have to look at how they are members of a disfavored group in Fiji, how they have well-founded fear of future persecution, how they might be considered upon return, that he might be mistreated upon his return after a long absence from Fiji. On the voluntary departure, we lack jurisdiction to review that claim, don't we? Your Honor, with regards to voluntary departure, our position is that had the judge and the board properly conducted analyses of the two criminal convictions, they would have reached different conclusions, and that's why this Court should remand the case back with instructions for proper... Essentially, you're saying you're not asking us to review the voluntary departure, you're just asking us to remand as to the underlying deportation, in which case... Yes, Your Honor. Because it all ties in, the decision on the voluntary departure. I don't have any time. You should do that. Thank you very much. May it please the Court. My name is Claire Workman, and I represent the Attorney General of the United States, who is the respondent in this case. You say you're Claire Workman? Yes, Your Honor. Okay. Thank you. Since Mr. Rohit was admitted as a lawful permanent resident of this country in 1994, he has committed a string of crimes resulting in five convictions, two of which form the basis of his removability from the United States. When was his actual jail time for all of these? Not very much. Let's see, Your Honor. For the 1997 solicitation of prostitution conviction, he received ten days in jail, three years probation, and a fine. For his 1998 driving on a suspended license conviction, two years probation and a fine. For the 1998 dissuading or attempting to dissuade a witness through the use of force or threat of force, six months of work furlough, three years probation and a fine. And there was another ---- All right. It's not worth going further, but not very much is the bottom line. That's correct, Your Honor. So the two crimes that constitute the basis of removability here are, one, knowingly and maliciously preventing or dissuading a witness through force or threat of force, and soliciting prostitution. On the soliciting of prostitution, that's the 647B, is that it? Yes, Your Honor. That's correct. Judge Smith raises the question whether this was argued in the brief from the IJ hearing to the BIA. Was it argued in the brief and presented to the BIA for decision at that time? I don't believe so, Your Honor. And therefore, this Court would lack jurisdiction to consider that challenge. It's confusing in the brief to the Board. And that's where the question arises, because on page 106 of the record, there ---- or excuse me, page 104, there's a reference to 647B, but then it goes on to talk about it in terms of the dissuading or attempting to sway a witness. And so there's some confusion to the Board as to which statute they were actually addressing. But you didn't argue in your briefs that it wasn't adequately exhaustive, right? I don't believe we did, Your Honor, but juris ---- but ---- I understand that it's jurisdictional, but when it's at least confusing, as you say, and when you don't argue it, is there any point? Doesn't that regard seem to suggest at least a decision that it's sufficiently confusing that we ought to consider it exhaustive? No, Your Honor. I don't believe so, because also with respect to what was discussed before the Board, it was with respect to the 647B statute, it was framed in terms of the ---- this Court's decision in Capolino which dealt with ---- so there was an argument that this statute was divisible and that whether all of the conduct described in the California statute with respect to prostitution fit the Federal definition of prostitution. Exactly. So that's an argument that it's not categorically covered. Well, no, Your Honor, because that was dealing with ---- because ---- It might be a lousy argument that it's not categorically covered, but it's an argument that it's not categorically covered. I don't believe so, Your Honor, because it's ---- they're two different things. The question here is, is whether this statute, 647B, whether the conduct within it constitutes categorically a crime involving moral turpitude. I understand that. But the ---- It's a badly framed argument. The question is how precise are we going to be? And given that and given the fact that you didn't argue it in your brief and given the fact that it's a kind of continuum in the sense that there is something in that brief that is at least related to the problem, does it make any sense for us now to be backtracking and saying ---- and turning this into a jurisdictional problem when it's really an interpretive problem, i.e., how is this brief fairly  justified? Would somebody reading this brief know that they were challenging the categorical nature of whether this offense is a CIMT? Well, apparently the Board didn't know that from reading the brief. But the fact is that if this ---- it is our position that it was not exhausted before the Board. If this Court finds that it was sufficiently exhausted, then the Board did implicitly address it by not disturbing the finding on removability, which requires that both crimes involve moral turpitude, and then the Board would incorporate the immigration judge's reasoning with respect to ---- Which they said they did. So one can't even infer that they didn't understand it, as opposed to the fact that they were simply adopting the Board's reasoning as to that issue and therefore didn't comment on it. They do that all the time. Right, Your Honor. I mean, if ---- All right. So let's talk about the prostitution offense on the merits briefly. Okay. The IJ's reasoning is certainly a little sparse. So what cases would you point to as supporting the notion that solicitation, which doesn't involve the act itself directly, is in fact a crime of moral turpitude? What case law supports that? Well, there's the matter of Lambert case that we cite in our brief, the Board case that specifically includes solicitation of prostitution as being a crime involving moral turpitude. And if this Court is concerned about this being solicitation and not the underlying offense, this Court has held that it's ---- that it looks to the underlying offense when determining whether an incoit crime is also a crime involving moral turpitude. Now, we had a recent on-bank case regarding consensual sexual relations with a minor. How does that fit into this? Are you referring to Navarro-Lopez, Your Honor? Oh, I'm sorry. Which case are you ---- With a Q. It's the case about where there was a ---- it was essentially a statutory rape of a person who was ---- I think the answer is that it was probably not a CIMT case. It might have been a child abuse case. But it may not have been a CIMT case, and that may be the answer to it. Well ---- Quintero, maybe? Quintero-Salazar. Yes. Oh, okay, Your Honor. That involves a California statute prohibiting sexual intercourse with a minor under 16 when the perpetrator was 21 years or older. And the ---- because this Court imagined a situation involving a 21-year-old college student having consensual intercourse with a minor who was 15 years old in 11 months, found that that example would not ---- therefore, that statute would not apply. But this ---- but the Supreme Court's decision in Duenas-Alvarez has instructed that there be a realistic probability, not a theoretical possibility, that the State would apply the statute to conduct that falls outside the generic definition of a crime involving moral turpitude. So here, the solicitation of prostitution and also the dissuading or attempting to dissuade a witness through force or threat of force, they both ---- this is important that they both involve the two components that the Board and that this Court ---- Does it make any difference that prostitution is legal in Nevada? No, Your Honor. In terms of its inherent ---- we happen to have a case later this week on the question of prostitution, brothels in Nevada. So obviously, Nevada has a different view, and does that suggest that it's not so universally depraved and based and so on that we can't simply leap to the conclusion that this is covered? No, Your Honor. I realize that this is not information that's contained in the record, but because you've asked, I was wondering about Nevada. And it's actually not legal in the entire State of Nevada. I mean, we know exactly what it is because we're working on it. Okay. It's not legal in Las Vegas or in Reno, but it's legal elsewhere. And then it's opt-out. Yes, Your Honor. So the fact that one State has a different view about prostitution, that does not I mean, frankly, here is my problem. This is a category that is impossible to pin down, crime of moral turpitude. As to something ---- I mean, murder is illegal anywhere, so it's easy. But once you have something as to which there is at least some difference of opinion in the United States as to whether it is so awful that it needs to be banned, where do you go from there? When you just apply some words, you say, oh, it's base, it isn't base. How do you do this? Well, what I was saying before about there being two general components to ---- aside from crimes involving fraud, two general components for crimes involving moral turpitude, which are the intent requirement and also the act that is base, vile, and depraved. But it's that part of it that is just a bunch of labels attached to a conclusion. As illustrated by the fact that California and Nevada, adjoining States, have different answers and would apply different words. So I don't understand how we do that, how you ---- how the Board does it and how we review it. Well, Your Honor, the matter of Lambert, the Board, that is from 1965, and there's been no ---- that I could find significant challenge to the fact that solicitation or prostitution in general is not a crime involving moral turpitude. So it's just well established, and I haven't found any case law by this Court either so that would speak otherwise. But suppose somebody is, you know, getting up one morning and saying, no, I don't want to do anything that's going to get me, you know, kicked out of the country. So I have to know whether this is a crime of moral turpitude or not. How are they supposed to know the answer to that question? Well, Your Honor, they would look to the Board's decisions, as there is a public decision on this issue in Lambert, and also other circuits, as we've cited in our brief, the Fifth Circuit has found solicitation, prostitution to be a crime involving moral turpitude. If somebody in Nevada was to engage in prostitution in Las Vegas, instead of driving 60 miles and engaging in prostitution there, would that be covered? Prostitution in Las Vegas is illegal. It's illegal, but just because they didn't drive 60 miles, they could have driven 60 miles to the suburbs and then it would have been legal. Right, Your Honor. Your Honor, it's just that it's generally, I think, the majority, the vast majority of Americans would consider prostitution. It's the fact that money is being exchanged for sex or for a lewd conduct that involves the moral turpitude. Well, you know, you think about the thing that we're talking about, I guess, is intercourse in here between adult people. Now, you can't say, I guess, that that's base and vile. It happens in marriage and it happens otherwise. No. So the thing that makes it base or vile, I guess, is that someone wanted to get money for it or pay money for it. And then the payment, the money, makes the thing vile and base. And so that's really the argument, I guess. Yes, Your Honor, exactly. And that's the basis on which the BIA, I think, cited that California case that said we find that, well, for impeachment purposes, I guess it was, or something the case was about. But I guess that really gets down to the point. It becomes a consensual act, if you will, by the handing over of money and the agreement to perform the sexual act. And you could say, well, the person that's willing to engage in prostitution, the female, if you will, I guess, had to do it for some reason. It was compulsory because of addiction or the drugs needed to get the money. I think there may be others that just say, you know, I really like doing this and I can get paid for it, too. That's okay. So I'm not sure where we apply the base and vile, where that comes from. Well, Your Honor. The money, I guess, but I don't know how that works out. I see that my time has left. Go ahead, please. But basically for the reasons that the immigration judge cited, it's just contrary to the basic standards of decency between men and women in our society. Except in Nevada. I mean, that's really not only in Nevada, except in Amsterdam and except in some other places. Right, Your Honor. But there are, with respect to a lot of different crimes or issues involving morality, there are differences in, among states, among countries. But essentially, I just have so much difficulty with a standard that is so amorphous that there seems, I mean, it would be one thing, if you at least have universality, you could rely on that. But once you don't have universality, what, how do you put your hands on the standard that you're applying? Well, perhaps what would be helpful is if Congress were to establish a more concrete definition of crime involving moral turpitude. But it hasn't done so. And so, therefore, it's left to the administrative agency to interpret that to the best of its ability. The problem is that once you expand it, and this may not be an example, but certainly in recent years, the agency has been expanding it. And as you expand it more and more, it loses more and more content. It's one thing if you're looking at it as a fairly narrow category of ascertainable things or offenses. But once it's turning into anything that some locality doesn't like and properly bans and says, it loses any limits, any boundaries. And this may not be an example of that, except that when you start talking it through, it's hard to figure out, as Judge Thomas was demonstrating, exactly what we're attaching the word base and vile to. It's not the act and it's not the money, so what is it? Well, I believe it is the money that is what makes it base and vile and depraved, Your Honor. But I realize your concern that it is a nebulous concept to some extent, crime involving moral turpitude. But, again, it's the Congress has left that responsibility to the agency to define what it means with respect to any particular crime. Okay. Thank you very much. Thank you, Your Honor. Thank you. Counsel? Your Honor, with respect to the payment of money being the vile and the base, I don't think that would really put an end to this discussion. It could be other consideration and that would open another other possibilities what is being exchanged and is that a crime of moral turpitude or not, if it's something other than money? On the other hand, if you walk up to somebody on the street and said, do you think prostitution is a crime of moral turpitude, they'd probably say yes, if they knew what moral turpitude meant. Well, maybe, Your Honor, but the fact that it's that it might be morally wrong to most of the members of our society, that does not make it a crime of moral turpitude pursuant to this circuit's previous discussion. But it is one of the standards, is it not? Is it an accepted moral standard? Is it malamance? Is it actus reus rather than mens rea? So one of those is, is it an accepted moral standard? That's one of the things we look at, isn't it? Yes, Your Honor. Yes, Your Honor. With regards to developing this issue on appeal to the BIA, it was, I believe, maybe not so much concisely contained within the title of the section that discussed the fact, but I think there is enough mention of the judge's failure to conduct a proper analysis of this conviction. And then it's properly set out in the opening brief to the Ninth Circuit in argument number one. That's agreed upon. The question is whether it was adequate in the BIA. I'm sorry? The question is whether it was adequate in the BIA brief. But thank you, counsel. Thank you very much. The case of Roehig v. Mukasey is submitted.
judges: Thompson, Berzon, Smith